UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DIMITRIOS GOROS,

                        Plaintiff,

        v.                                                  **DECISION AND ORDER**
                                                            01-CV-331 S
EDWARD DONNELLY, et. al.,

                        Defendants.


# I. INTRODUCTION

In this case, Plaintiff Dimitrios Goros, a former inmate of the Wende Correctional

Facility Regional Medical Unit ("Wende") alleges that Defendants were deliberately

indifferent to his serious medical needs in violation of the Eighth Amendment.  Plaintiff

seeks damages under 42 U.S.C. § 1983.  Presently before this Court is Defendants'

Motion for Summary Judgment.[1]  (Docket No. 49).  For the following reasons, Defendants'

Motion is granted and Plaintiff's Complaint is dismissed.


# II. BACKGROUND

## A.    PROCEDURAL HISTORY

Plaintiff commenced this action *pro se* and filed his original Complaint with the

District Court for the Northern District of New York on April 12, 2001.  The matter was then

---

[1]        In support of their Motion for Summary Judgment, Defendants filed the following
documents: a Statement of Facts, a Declaration by Peter Sullivan, a Declaration by Karen Bellamy, and a
Memorandum of Law.  In opposition, Plaintiff filed an Affidavit by Dimitrios Goros, a Statement of Facts, a
Memorandum of Law, and supporting exhibits.  In reply, Defendants filed a Declaration by David State.

transferred to the Western District of New York, and was dismissed *sua sponte.*  Plaintiff successfully appealed to the United States Court of Appeals for the Second Circuit and filed an Amended Complaint.

On August 27, 2003, this Court dismissed Defendant Goord pursuant to 28 U.S.C. § 1915A(b), and dismissed Plaintiff's personal property and due process claims with prejudice pursuant to 28 U.S.C. § 1915A(b).  (Docket No. 15).  On June 23, 2004, this Court granted Plaintiff's Motion to Appoint Counsel, and appointed James C. Cosgrove as his attorney.  (Docket No. 25).  On March 24, 2005, Plaintiff filed a Second Amended Complaint.  (Docket No. 32).

On April 23, 2007, Defendants filed a Motion for Summary Judgment, seeking to dismiss Plaintiff's remaining claims, which is presently before this Court.  (Docket No. 49).

## B.    FACTS

Plaintiff is an inmate in the custody of the New York State Department of Correctional Services.  (Plaintiff's Statement of Facts, Docket No. 65, ¶ 1).  From February 12, 1999 to December 4, 2002, Plaintiff was housed at the Regional Medical Unit at the Wende Correctional Facility, which is an inpatient medical care facility for inmates. (Plaintiff's Statement of Facts, Docket No. 65, ¶¶ 4-5).  Plaintiff suffers from chronic pulmonary disease, emphysema, and gastritis.  (Plaintiff's Statement of Facts, Docket No. 65, ¶ 4).

Upon arriving at Wende, Plaintiff was placed in a private room, and was prescribed medication and a restrictive diet for his breathing and gastrointestinal problems.  (Plaintiff's Statement of Facts, Docket No. 65, ¶ 8).

Plaintiff alleges that when he arrived at Wende he was denied new dentures to replace ones that had been lost.  (Plaintiff's Statement of Facts, Docket No. 65, ¶ 10). Plaintiff claims that he did not receive new dentures until September of 2003, after he had left Wende.  (Plaintiff's Statement of Facts, Docket No. 65, ¶ 11).

Plaintiff alleges numerous instances when he was denied medical treatment. (Second Amended Complaint, Docket No. 75, pp. 5-9).  In particular, Plaintiff claims that nurses would regularly refuse to provide him with his inhaler and his oral medication, and that Defendants refused to provide him with new dentures.  (Second Amended Complaint, Docket No. 75, pp. 5-9).

Plaintiff states that when he arrived at Wende, he was placed on a restrictive diet that consisted of soft ground meat, no tomato sauce, no cabbage salads, and no lettuce. (Second Amended Complaint, Docket No. 75, ¶ 51).  Plaintiff alleges that his restrictive diet was not followed from February 12, 1999 through December 4, 2002.  (Second Amended Complaint, Docket No. 75, ¶ 52).

## III. DISCUSSION

### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could

return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).  A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson, 477 U.S. at 248.  In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

At this stage, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  Thus, summary judgment is not appropriate if "there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Ford, 316 F.3d at 354.

When deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).   However, the party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

**B.     Denial of Medical Treatment Claims**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)).  Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Plaintiff's denial of medical treatment claim is grounded in the Eighth Amendment.

The Eighth Amendment to the United States Constitution applies to the States through the Fourteenth Amendment, and "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 297, 11 S. Ct. 2321, 2323, 115 L. Ed. 2d 271 (1991); U.S. Const. amend. VIII.  As such, prison conditions and the treatment prisoners receive while incarcerated are subject to scrutiny under the Eighth Amendment.  See DeShaney v. Winnebago County Dept. of Social Svcs., 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-1006, 103 L. Ed. 2d 249 (1989).  In addition, the Supreme Court has recognized that a prisoner's claim that he was intentionally denied medical treatment is cognizable under the Eighth Amendment and § 1983:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison

> doctors in their response to the prisoner's needs or by prison
> guards in intentionally denying or delaying access to medical
> care or intentionally interfering with the treatment once
> prescribed.   Regardless of how evidenced, deliberate
> indifference to a prisoner's serious illness or injury states a
> cause of action under § 1983.
> . . .
> In order to state a cognizable claim, a prisoner must allege
> acts or omissions sufficiently harmful to evidence deliberate
> indifference to serious medical needs.   It is only such
> indifference that can offend evolving standards of decency in
> violation of the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 104, 106, 97 S. Ct. 285, 291, 292, 50 L. Ed. 2d 25 (1976)

(quotations and citations omitted).

   "A claim of cruel and unusual punishment in violation of the Eighth Amendment

has two components – one subjective, focusing on the defendant's motive for his conduct,

and the other objective, focusing on the conduct's effect." Sims v. Artuz, 230 F.3d 14, 20

(2d Cir. 2000) (citing Hudson v. McMillian, 503 U.S. 1, 7-8, 112 S. Ct. 995, 999, 117 L. Ed.

2d 156 (1992); Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)).  With respect to a

claim of deliberate indifference to a serious medical need, a prisoner must show that he

suffered from a "sufficiently serious" medical condition, see Chance v. Armstrong, 143 F.3d

698, 702 (2d Cir. 1998), and that the defendants acted with a "sufficiently culpable state

of mind," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

   The subjective component "requires a showing that the defendant had the

necessary level of culpability, shown by actions characterized by 'wantonness' in light of

the particular circumstances surrounding the challenged conduct." Sims, 230 F.3d at 21

(citations omitted).   The objective component is "contextual and responsive to

contemporary standards of decency." Id. (quoting Hudson, 503 U.S. at 8).

> "An official acts with the requisite deliberate indifference when
> he 'knows of and disregards an excessive risk to inmate health
> or safety; the official must be both aware of facts from which
> the inference could be drawn that a substantial risk of serious
> harm exists, and he must also draw the inference.'"

Brown v. Picarelli, No. 96 Civ. 1222, 2003 WL 1906180, at *6 (S.D.N.Y. Apr. 15, 2003)

(quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).


**C.    Defendants' Motion for Summary Judgment**

Defendants move for summary judgment partly on the ground that Plaintiff has failed

to show a genuine issue of fact as to whether Defendants were deliberately indifferent to

his serious medical needs.   Defendants argue that no reasonable jury could find

Defendants were indifferent because the record shows they addressed Plaintiff's many

complaints.  Defendants further argue that Plaintiff's disagreement with Defendants over

what constitutes proper medical care is insufficient to support a constitutional claim.

Here, viewing the evidence in the light most favorable to Plaintiff, the record does

not support his claims that Defendants failed to address his complaints concerning his

medication, his inhaler, his diet, and his dentures.   Defendant Post stated that Plaintiff

would write "numerous letters, sometimes on a daily basis."  (Post Deposition, Docket No.,

51, p. 91).  Likewise, Defendant Staebell recalled that the medical unit received numerous

complaint letters from Plaintiff.  (Staebell Deposition, Docket No. 51, p. 108).

Staebell explained that when he spoke with Plaintiff to address these complaints

"[Plaintiff] would go on for about half an hour, ranting and raving about how the doctor was

out to kill him."  (Staebell Deposition, Docket No. 51, p. 110).  Staebell stated that he was

never able to leave Plaintiff satisfied with an explanation.  (Staebell Deposition, Docket No.

51, pp. 110-11).  Staebell stated that all complaint letters at Wende were logged into their

system, and that any complaints were addressed within two or three days.  (Staebell

Deposition, Docket No. 51, p. 111).

The record contains numerous letters, some directed to Plaintiff and others between

prison staff, that demonstrate Defendants were addressing Plaintiff's complaints:

- On June 11, 1999, Defendant Staebell and T. Hicks, a nurse administrator, indicated in a letter to Superintendent Donnelly that they had investigated numerous complaints from Plaintiff, and had convened a meeting on April 22, 1999, in Plaintiff's room, with Dr. Gutierrez, Nursing Director Narcy Czajka, two nurse administrators, and two nurses concerning Plaintiff's medications and treatment.  All investigations concluded that the staff had complied with procedures and attended to Plaintiff's medical needs.  (Docket No. 51, p. 143).

- On May 12, 2000, J. Gotowko wrote a letter to Plaintiff after investigating his complaint about an allegedly "used bottle of nasal spray" that Plaintiff was administered. Gotowko explained that the bottle was not used, but was half-filled with air—like all nasal sprays—so that the air and liquid could mix causing the spray to form.  (Docket No. 51, pp. 145-46).

- On May 23, 2000, Defendant Post wrote in a letter to Superintendent Donnelly that she had found Plaintiff's dentures, but that Plaintiff refused to accept them, and claimed that they were his "old dentures."  Post could find no documentation that Plaintiff had ever been issued a second set of dentures.  Post had informed Plaintiff that no new dentures would be provided as the "found" dentures were serviceable.  (Docket No. 51, p. 148).

- On May 17, 2000, Nurse Administrator Unger wrote a letter to Plaintiff indicating that there was no record of him having been issued a second set of dentures.  Unger wrote that Plaintiff had refused to accept the "found" dentures, and had refused a dental follow-up appointment for fitting.  (Docket No. 51, p. 161).

- On July 18, 2000, D. Grzyna, the Regional Dietician, wrote a letter to Plaintiff informing him that he would not need to be on a special diet if he used his dentures—which at this time had

been located.  Grzyna also informed Plaintiff that due to his "frequent complaints," the kitchen had purchased new equipment to process his meat entrees. (Docket No. 51, p. 147).

- On May 10, 2001, Nurse Payne wrote to Czajka concerning Plaintiff's complaint that he was denied his oxygen unit.  Payne explained that he provided Plaintiff with an oxygen unit, but that the gauge was inaccurate.  Plaintiff refused to use it and accused Payne of trying to kill him.  (Docket No. 51, p. 159)

- On August 31, 2001, Defendant Staebell wrote a letter to Plaintiff concerning a complaint that he had not been given his inhaler.  Staebell informed Plaintiff that the inhaler was left at his bedside as it was a self-administered medication.  (Docket No. 51, p. 152).

- On December 26, 2001, Nursing Director Czajka responded to Plaintiff's complaint that he was served fish on December 9, 2001, which did not comply with his special diet.  Czajka stated that she questioned the nursing staff and learned that Plaintiff requested and was served a substitute meal. (Docket No. 51, p. 124).

- On April 11, 2002, staff reviewed Plaintiff's complaint concerning his special diet, and determined that the kitchen staff was aware of his special diet orders.  (Docket No. 51, p. 124).

- On October 3, 2002, Nursing Director Czajka wrote to Plaintiff concerning his complaint that he did not have a remote control for his television on September 28, 2002.  Czajka wrote that Plaintiff was provided with a remote on October 1, 2002. (Docket No. 51, p. 115)

- On October 18, 2002, Plaintiff was informed that due to a computer problem at the Wende pharmacy, his Albuterol inhaler had to be ordered from an outside pharmacy.  In the meantime Nurse Willey obtained an inhaler from the emergency cabinet. (Docket No. 51, p. 113).

- On November 4, 2002, Defendant Post wrote to Plaintiff that she had reviewed his complaint letter to Superintendent Donnelly regarding his medication.  Post wrote that Dr. Gutierrez reported Plaintiff had been refusing to take his medication.  (Docket No. 51, p. 127).

The evidence overwhelmingly supports Defendants' position that they adequately addressed Plaintiff's complaints.  Moreover, there is no evidence in the record that would

permit a reasonable jury to find that Defendants ignored or were deliberately indifferent to Plaintiff's complaints or medical needs.  See e.g. Brown v. Wallace, 957 F.2d 564, 566 (8th Cir. 1992) (finding no deliberate indifference where defendants investigated and responded to prisoner's complaints).  Here, Defendants repeatedly investigated Plaintiff's complaints, met personally with Plaintiff, and responded to his complaints in writing.  Plaintiff has not demonstrated that there is a question of fact as to whether Defendants acted with deliberate indifference.

As to whether Plaintiff's complaints were remedied, this Court finds that Plaintiff's complaints consist of instances where Plaintiff ultimately disagreed with Defendants regarding his medications, his diet, and his dentures.  As the Second Circuit has explained, "mere disagreement over the proper treatment does not create a constitutional claim." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).  Plaintiff cannot prevail on claims where he has refused medications, meals, or dentures merely because he disagrees with the treatment that Defendants have prescribed.  Accordingly, Defendants are entitled to summary judgment on these claims.

To support an Eight Amendment violation, a plaintiff must demonstrate deliberate indifference to his medical needs; Plaintiff has failed to do so.  Even considering the record in the light most favorable to Plaintiff, no reasonable jury could conclude that Defendants acted with a deliberate indifference to Plaintiff's serious medical needs.  On the contrary, the record indicates that Defendants were anything but indifferent, and that they efficiently and adequately addressed each of Plaintiff's complaints concerning his medical treatment. This Court will therefore grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's Complaint.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 49) is GRANTED in its entirety.

FURTHER, that the Clerk of the Court is directed to take the steps necessary to close this case.

SO ORDERED.

Dated:   September 28, 2007
         Buffalo, New York

                                        /s/William M. Skretny
                                       WILLIAM M.  SKRETNY
                                       United States District Judge

11